**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAIME LOPEZ,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-5158** |
| | : | |
| **MR. BONDS, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**COSTELLO, J.** **NOVEMBER 2, 2026**

*Pro se* Plaintiff Jaime Lopez brings this civil action pursuant to 42 U.S.C. § 1983 and state law based on incidents that occurred at George W. Hill Correctional Facility ("GWHCF").[1] He also seeks leave to proceed *in forma pauperis* and has filed a Motion for Requested Documents (ECF No. 9). For the following reasons, the Court will grant Lopez leave to proceed *in forma pauperis*, deny the Motion for Requested Documents, and dismiss his Amended Complaint in part pursuant to 28 U.S.C. § 1915 while permitting certain claims to proceed.

## I. FACTUAL ALLEGATIONS

Lopez asserts that while he was a pretrial detainee at GWHCF, he was the target of harassment, physical assault, and retaliation by Sergeant C. Burke over the course of several weeks and that other GWHCF staff and supervisors failed to protect him.[2] Lopez alleges that on

---

[1] Lopez names as Defendants (1) Sergeant C. Burke; (2) Compliance Coordinator Sarah Bowles; (3) Deputy Warden of Operations "Mr. Foley"; (4) Deputy Warden of Security "Mr. Leech"; and (5) former Warden Willie Bonds. (Am. Compl. at 2).

[2] The facts set forth in this Memorandum are taken from Lopez's Amended Complaint (ECF No. 7), which is the governing pleading in the case. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'"

May 28, 2026, Sergeant Burke ordered him out of his cell, pretended to examine Lopez's hand and then squeezed it, "applying massive amounts of pressure" in order to hurt Lopez. (Am. Compl. ¶ 15.) Lopez states that his hand "was already swollen from an infection he caught one day prior" and that Burke's use of force on his hand caused additional pain and left him crying. (*Id.* ¶¶ 16-17.) Later that day, Burke entered Lopez's unit while he was watching TV and told him he had to either find inmate Mickell Corsbie's commissary food or else go to the Restricted Housing Unit ("RHU"). (*Id.* ¶ 18.) Lopez denied knowing anything about the missing commissary food, and suggested Burke could search his cell or check the surveillance cameras to verify his claims. (*Id.* ¶ 19.) Burke "grew upset and punched [Lopez] in his left arm/shoulder area, causing [Lopez] to scream and crouch in pain. [Burke] then tried to provoke [Lopez] into throwing a punch back at him." (*Id.* ¶ 20.) After punching Lopez, Burke ordered another correctional officer to place Lopez in handcuffs and escort him to the medical unit, then to the RHU. (*Id.* ¶ 22.) Later that day, Lopez received a disciplinary write-up from Burke, in which he falsely claimed that Lopez stole commissary items from the other inmate. (*Id.* ¶ 23-24.) At a disciplinary hearing on June 2, 2026, Lopez was found not guilty of all charges. (*Id.* ¶ 25.) He returned to the general population on June 4, 2026. (*Id.* ¶ 26.)

---

(citation omitted)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted). The Court cannot look to the original Complaint "to help fill the factual void in [the plaintiff's] amended complaint." *March v. Dep't of Defense*, No. 25-1650, 2025 WL 2417754, at *1 (3d Cir. Aug. 21, 2025) (*per curiam*) (citing *Royal Canin U.S.A.*, 604 U.S. at 35); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) (explaining that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings"). The Court adopts the pagination assigned to the Amended Complaint by the CM/ECF docketing system.

Shortly after his return to general population, Lopez submitted complaints regarding Burke's actions on May 28, 2026. (*Id.* ¶ 27.) On June 9, 2026, Compliance Coordinator Sarah Bowles spoke with Lopez about PREA complaints he had filed against Sergeant Burke and another GWHCF employee, "Ms. Brown."[3] (*Id.* ¶ 29.) During the meeting, Bowles "tried intimidating [Lopez] on the possible actions that might be taken against him if he continues to file grievances on defendant Burke." (*Id.* ¶ 30.) Bowles told Lopez she would get back to him in a few days with answers to his questions about footage of the relevant incident. (*Id.* ¶ 31.) Later that day, Lopez filed a request that footage of the incident be preserved. (*Id.* ¶ 32.) On June 13, Lopez was placed in handcuffs by Correctional Officer Lewis and escorted to the RHU. (*Id.* ¶ 33.) While in the RHU, Sergeant Serady told Lopez he was there "because he pissed off the wrong people." (*Id.* ¶ 35.) Lopez continued filing complaints but did not receive a reply to any of them. (*Id.* ¶ 36.) Finally, Lopez filed a grievance directly to GWHCF Warden Bonds. (*Id.*) After being housed in the RHU for 20 days, he was released on July 4, 2026. (*Id.* ¶ 37.)

Over the next several days, Lopez used another inmate's tablet to file complaints against Burke. (*Id.* ¶ 38.) On July 9, Burke "ordered [the inmate] off the unit [and] order[ed] him to stop allowing [Lopez] to use his prison issued tablet" to file complaints. (*Id.* ¶ 39.) On July 9, Lopez received his own tablet and resumed filing complaints. (*Id.* ¶ 40.) On July 13, Sergeant Burke, along with three other correctional officers, entered Lopez's unit and placed him in handcuffs. (*Id.* ¶ 41.) While escorting Lopez off the unit, Burke "squeezed [his] hand causing [Lopez] to jerk in pain" at which point Burke "slammed [him] to the floor." (*Id.* ¶ 42.) The three other CO's restrained Lopez "while Burke was applying pressure to [his] neck, choking

[3] Lopez does not provide any background information about the referenced PREA complaint.

him and yelling, 'I will fuck you up, young buck.'" (*Id.*) Lopez was then escorted to the medical unit, where Burke ordered the nurse on duty not to document Lopez's head and shoulder injuries. (*Id.* ¶ 43.) Lopez states that the nurse was new to GWHCF and followed Burke's orders for fear of losing her job. (*Id.* ¶ 44.) Lopez was eventually escorted to the RHU. (*Id.* ¶ 45.) While escorting Lopez, Burke told him that he was a "Golden Glove" boxer, told Lopez he would not be getting his tablet back, and stated he would be informing Lopez's unit that he is a "jailhouse snitch." (*Id.* ¶ 46.)

The next day, Lopez received a disciplinary write-up, falsely stating that he spit on one of the CO's who escorted him off the Unit and that he elbowed Burke. (*Id.* ¶ 49.) On July 16, Lopez was found not guilty of assaulting staff but guilty of threatening staff. (*Id.* ¶ 51.) He was sentenced to 15 days in the RHU. (*Id.*) Lopez continued submitting complaints about alleged harassment by Sergeant Burke until his "P.I.N. was cut off." (*Id.* ¶ 52.) On July 20, Lopez received legal mail from civil rights attorney Michael Bailey of the Pennsylvania Institutional Law Project. (*Id.* ¶ 53.) Later that day, Lopez received a message from Bowles "stating that she'll talk to [Burke] about his actions." (*Id.* ¶ 54.) On August 20, 2026, Lopez finally received a response to a complaint he filed on June 24, stating that his complaints should be filed on the tablet under the "request to staff" section. (*Id.* ¶ 55.) Lopez asserts that he has followed all necessary steps for filing grievances and PREA complaints, but that he still has not received a reply to most of them. (*Id.* ¶¶ 56-57.) He alleges he has witnesses who will testify on his behalf and that there is video footage of each incident in which Burke used force against him. (*Id.* ¶ 58.) He has requested that video of each of those incidents be preserved but to date has received no response to those requests. (*Id.*)

Based on the above allegations, Lopez asserts: (1) an excessive use of force claim against Defendant Burke; (2) failure to intervene claims against Defendants Bowles, Foley, Leech, and Bonds; (3) a First Amendment retaliation claim against Defendant Burke; and (4) assault and battery claims against Defendant Burke. (*Id*. at 9-10.) Lopez seeks monetary damages, attorney's fees, costs, a declaration that the Defendants violated his constitutional rights,[4] and an order "prohibiting defendants from retaliating against [him] for filing this action." (*Id*. at 11.) He sues all Defendants in their individual and official capacities.[5]

---

[4] Declaratory relief is unavailable to adjudicate past conduct, so Lopez's request for this declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (per curiam) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (per curiam); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

[5] Lopez appears not to have understood the implication of naming the defendants in their official capacities. Claims against municipal employees named in their official capacity are indistinguishable from claims against the governmental entity that employs the Defendant, here Delaware County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). Lopez fails to allege that he suffered a constitutional violation due to a policy or custom of Delaware County. Accordingly, his official capacity claims against the Defendants are not plausible and must be dismissed without prejudice.

## II. STANDARD OF REVIEW

The Court will grant Lopez leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[6] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Amended Complaint as true, draw all reasonable inferences in Lopez's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Lopez is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must

---

[6] Because Lopez is incarcerated, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations . . . this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III. DISCUSSION

### A. Federal Law Claims

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer,* 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983); *see also Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (explaining § 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979))). To state a claim under § 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Elmore,* 399 F.3d at 281); *see also Halsey,* 750 F.3d at 290 ("To state a claim under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a federal right ... [and] that the person who has deprived him of that right acted under color of state or territorial law.'" (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980))).

#### 1. Excessive Force

Lopez asserts an excessive force claim against Defendant Burke. While he cites the Eighth Amendment as the basis for his claim, because Lopez was a pretrial detainee at the time

of the relevant incidents, the Fourteenth Amendment Due Process Clause governs his claims. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015); *Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021). For a pretrial detainee to state a due process violation based on excessive force, he must allege plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 at 396-97. The following circumstances "may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397. Whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'" *Jacobs*, 8 F.4th at 194 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts should analyze "these circumstances 'from the perspective of a reasonable officer on the scene'" while keeping in mind that decisions about safety and order require the expertise of correctional officers, "'who must have substantial discretion to devise reasonable solutions to the problems they face.'" *Id.* at 195 (quoting *Kingsley*, 576 U.S. at 397 & 399).

Lopez's excessive force claims against Burke appear to be based on three incidents: (1) the May 28, 2026 incident where Burke forcefully squeezed Lopez's already-injured hand outside his cell, causing him to cry from the pain; (2) the May 28, 2026 incident where Burke punched Lopez's arm and shoulder without provocation, causing Lopez to scream and crouch in pain; and (3) the July 13 incident where Burke squeezed Lopez's previously-injured hand while transporting him in handcuffs, slammed him to the ground, and then applied pressure to Lopez's neck and choked him. (*See* Am. Compl. ¶¶ 15-20, 41-42.) In each of these incidents, Lopez

alleges facts indicating that he presented no threat to Burke, was cooperating with Burke and other jail staff, and that Burke apparently used force intentionally and without any provocation in order to hurt him. (*See id.*) Accordingly, he plausibly alleges that the force used against him was unreasonable, in violation of the Fourteenth Amendment. The excessive force claim against Burke will therefore be served for a responsive pleading.

**2. Failure to Intervene**

Lopez also alleges that Defendants Bowles, Foley, Leech, and Bonds violated his Eighth Amendment and Fourteenth Amendment rights because they "fail[ed] to intervene to prevent or stop the attacks on [him], and fail[ed] to supervise their officers accordingly[.]" (*Id.* ¶ 64.) "Whether raised by a pretrial detainee under the Fourteenth Amendment or a convicted prisoner under the Eighth Amendment, a corrections officer's failure to intervene in a beating can be the basis of liability . . . under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so[.]" *Arrington v. Gustafson*, No. 22-226, 2026 WL 523114, at *12 (W.D. Pa. Feb. 25, 2026) (quoting *Gorrio v. Briggs*, No. 23-1697, 2025 WL 2177826, at *26 (M.D. Pa. July 31, 2025))); *see also Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) ("[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so."). "For a corrections officer to have a realistic and reasonable opportunity to intervene where an inmate is attacked, the beating must occur within the officer's presence or be within his knowledge, and the officer must have had sufficient time to intervene." *Burke v. Powell*, No. 20-1013, 2023 WL 3561345, at *9 (D.N.J. May 18, 2023) (citing *Smith*, 293 F.3d at 651).

Lopez fails to allege that Bowles, Foley, Leech, or Bonds were present when Burke used force against Lopez while on his unit on May 28 or while being transported on July 13, thus none of them had a "reasonable opportunity to intervene" in Burke's use of force. *See, e.g.*, *Leibner v. Borough of Red Bank Police Dep't*, No. 12-4104, 2013 WL 1065927, at *6 (D.N.J. Mar. 12, 2013) (granting motion to dismiss a failure to intervene claim where the plaintiff "has not pled that [the supervisory officer] was present or involved in Plaintiff's arrest."). Those claims are therefore dismissed with prejudice. To the extent Lopez asserts claims against Defendants Foley, Leech, and Bonds under a failure to train theory, those claims are not plausible for the reasons discussed below.

### 3. Failure to Supervise

Lopez alleges claims against three supervisory GWHCF officials—Deputy Wardens Leech and Foley, and Warden Bonds—for failing to properly supervise their subordinates. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

The first type of liability includes a failure to supervise. A plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and . . . [allege] that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *see also Chavarriaga*, 806 F.3d at 227. The "inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Chavarriaga*, 806 F.3d at 227.

Lopez asserts that Defendants Leech, Foley, and Bonds knew about and failed to intervene or stop the attacks on Plaintiff. (Am. Compl. ¶ 64.) However, his claims are undeveloped and will be dismissed. As an initial matter, Lopez does not explain the factual basis for his claims against each of the three supervisory Defendants and instead lumps them into a single claim. Where there are multiple events and defendants at issue, alleging personal involvement cannot be accomplished by referring to the Defendants as a group without clarifying the specific basis for each Defendant's liability. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014). Moreover, Lopez does not provide any factual allegations suggesting that any of the three Defendants was aware of an "unreasonable risk" presented by a pattern of misconduct by any of their subordinates and that Lopez was injured by the failure to address that unreasonable risk. In fact, only Defendant Bonds is discussed in the factual allegations section of the Amended Complaint, where Lopez notes that he filed a grievance directly to Bonds after failing to receive a response to his complaints. (Am. Compl. ¶ 36.) However, allegations that a

prison official participated in the grievance process, failed to take action in response to a prisoner's letter about the conditions in which he is confined, or failed to act after becoming aware of an employee's actions is, without more, insufficient to plead the officials' personal involvement in the underlying violations. *See Murray v. McCoy*, No. 23-2582, 2024 WL 1328231, at *3 (3d Cir. Mar. 28, 2024) ("Superintendent Ransom's awareness of Murray's allegations concerning C.O. McCoy, without more, is insufficient to establish personal involvement" (citing cases)); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (evidence that high level official was sent a copy of documents related to prisoner's claim and official's lack of response did not establish personal involvement, nor did involvement of officials who only reviewed and denied prisoner's grievances). Because Lopez does not otherwise allege any actions or omissions by the three supervisors that caused his alleged constitutional injuries, his supervisory liability claims do not meet the pleading standard. *See Ludwig v. Terra*, No. 25-1213, 2025 WL 2325654, at *14 (E.D. Pa. Aug. 12, 2025) (dismissing supervisory liability claims where plaintiff asserts in conclusory fashion that supervisory defendants failed "to intervene, supervise, properly train or adequately discipline the subordinate defendants.") (citation omitted)). Lopez's supervisory liability claims will therefore be dismissed.

**4. First Amendment Retaliation**

Lopez asserts a First Amendment retaliation claim against Defendant Burke. In order to state a plausible First Amendment retaliation claim, "a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir.

2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (internal quotation marks omitted); *see also Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). As to the first element, a prisoner's filing of a lawsuit, grievance, or other complaint, or even expressing an intent to do so to prison authorities, is constitutionally protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016) ("For purposes of Watson's retaliation claim, we cannot discern a substantive distinction between retaliation for informing prison officials of an intent to file a grievance or requesting the necessary forms to do so on the one hand, and actually filing such a grievance on the other."); *see also Snider v. Pa. DOC*, 505 F. Supp. 3d 360, 426 (M.D. Pa. 2020) (citing *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (*per curiam*)) (stating that "filing grievances and lawsuits" is protected activity); *Robinson v. Palco*, No. 21-2987, 2022 WL 3009746, at *3 (3d Cir. July 29, 2022) (*per curiam*) (concluding that a complaint stated a plausible retaliation claim where plaintiff alleged that he was issued misconducts that resulted in sanctions after filing PREA complaints).

Regarding the second element, an adverse action "is one sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Watson*, 834 F.3d at 422 n.6, 423 (citation modified) (first quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000); then quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment.").

To satisfy the third element, a prisoner must allege a causal link between the specific protected activity and the adverse action. *See, e.g.*, *Hammonds v. Headman*, 645 F. App'x 149, 152 (3d Cir. 2016) (*per curiam*) ("[B]ecause Hammonds' conclusory allegations fail to raise the required inference of a causal link between his grievance and the filing of misconduct reports, he failed to state a retaliation claim."); *Thomas v. Brinich*, 579 F. App'x 60, 62 (3d Cir. 2014) (*per curiam*). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422; *see also Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, [] conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation.").

To plausibly plead the requisite causal connection a plaintiff usually must allege either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at *2 (3d Cir. Aug. 29, 2023) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). "Absent supporting facts that make it reasonable to draw an inference of retaliation, . . . conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation." *Oliver*, 858 F.3d at 195 (citations omitted); *see also Wallace v. Pa. Dep't of Corr.*, No. 24-152, 2025 WL 1568665, at *7 (W.D. Pa. June 3, 2025) ("Where every defendants' action can obviously be explained without supposition of a retaliatory motive, some concrete basis for retaliation must be alleged to state a plausible claim."

Lopez asserts that he engaged in protected activity by filing several complaints, a grievance, and a PREA complaint,[7] all against Defendant Burke. He also alleges he suffered adverse actions, seemingly in response to his protected conduct. For example, on June 5, he began filing complaints against Defendant Burke and a few days later, on June 9, was threatened by Defendant Bowles with various adverse actions if he continued filing grievances against Burke. (Am. Compl. ¶¶ 27-30.) Similarly, on June 9, Lopez submitted a complaint asking that video footage of Burke's use of force incidents be preserved. (Am. Compl. ¶ 32.) He received no formal response to the request, but four days later, on June 13, he was sent to the RHU with no process or explanation, except that he had "pissed of the wrong people." (*Id.* ¶¶ 33-35.) He was ultimately kept in the RHU for 20 days before being released to the general population, again without explanation. (*Id.* ¶ 37.) From July 4-9, Lopez filed several complaints about Burke's "ongoing harassment and . . . retaliation." Just days later, on July 13, he alleges that Burke, accompanied by three other correctional offices, removed him from his cell without explanation, and intentionally injured him by squeezing his injured hand, slamming him to the ground, and applying pressure to his neck while threatening to "fuck you up, young buck." (*Id.* ¶¶ 41-42.) In each of these incidents, Lopez alleges he was subject to adverse conduct by, or seemingly at the behest of Burke, only a few days after engaging in protected activity aimed at reporting Burke's acts of harassment of him. He thus plausibly alleges a First Amendment retaliation claim that will be served for a responsive pleading.

---

[7] It is not clear from the Amended Complaint when Lopez filed his PREA complaint against Burke, but he implies that Burke's attacks on him were related to that complaint.

### B. State Law Claims

Finally, Lopez alleges state law claims for assault and battery against Burke. "Under Pennsylvania law, battery is defined as an intentional 'harmful or offensive contact with the person of another.'" *Martin-McFarlane v. City of Philadelphia*, 299 F. Supp. 3d 658, 670-71 (E.D. Pa. 2017) (citation omitted.) "The fact that contact occurs without consent is sufficient to establish that it is offensive, and no intent to harm the plaintiff need be established." *Id.* (citation omitted.) An assault can be described as "an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery." *Id.* (citation omitted.) "In other words, battery is an offensive touching without consent, and assault is an action that makes a victim believe that a battery is about to occur." *Id.* As discussed above, Lopez alleges plausibly that Burke used unreasonable force against him in the May 28 and July 13 incidents, by forcefully squeezing Lopez's injured hand in both incidents and slamming Lopez to the ground and choking him in the July 13 incident. These allegations also plausibly allege state law claims of assault and battery that will be served for a responsive pleading.

## IV. CONCLUSION

For the foregoing reasons, Lopez's Fourteenth Amendment excessive force, First Amendment retaliation, and state law assault and battery claims against Defendant Burke will pass statutory screening and be served for a responsive pleading. The Fourteenth Amendment failure to intervene claims against Defendants Bowles, Leech, Foley, and Bonds, and the Fourteenth Amendment failure to supervise claims against Defendants Leech, Foley, and Bonds will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C.

§1915(e)(2)(B)(ii). The Motion for Requested Documents will be denied as premature.[8] An Order follows, directing service of the claims passing statutory screening on Defendant Burke.

**BY THE COURT:**

**MARY KAY COSTELLO, J.**

---

[8] In his Motion, Lopez asks the Court to issue subpoenas directing Defendant to "save, hold and/or hand over camera footage of the relevant incidents of this lawsuit to Plaintiff and/or to the United States District Court for the Eastern District of Pennsylvania." (ECF No. 9 at 1.) As explained in the accompanying Order at ¶ 9, "[n]o discovery will take place in this case until the Court enters a scheduling order or other order permitting discovery. This means the Court **will not consider discovery motions** unless or until discovery is authorized. At this early stage of the case, it cannot yet be determined if a hearing or discovery will be necessary for the disposition of this case." Lopez's request for this relief is premature since no Defendant has yet been served.

Lopez also includes in his Motion a document titled "Order to Show Cause for Preliminary Injunction," which is a form of order asking the Court to enjoin the Defendants from retaliating against him. (ECF No. 9 at 2.) However, if Lopez seeks a preliminary injunction from this Court he must file an appropriate Motion showing that he is entitled to such extraordinary relief. *See* Fed. R. Civ. P. 65; *see also Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (explaining that to obtain a temporary restraining order or preliminary injunction, the moving party must show: "(l) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.").